The next case before the court, Milo & Gabby v. Amazon. It is case number 161290. It's an appeal from the Western District of Washington. Again, it's my understanding, counsel, that you want, at this time, five minutes for rebuttal. Is that right? That is correct, Your Honor. Okay. You may begin. Thank you, Your Honor. Good morning. Philip Mann on behalf of the appellants. May it please the court. The facts in this case are largely... Mr. Mann, do you have a minute? You argue that a billing record entry for less than an hour of research relating to palming off confirms that it's under 8A2. Do you have any authority for that proposition? Your Honor, it's just a basic fact. What happened in this case is... Well, it's basic fact that firms assign... say to somebody, hey, take a look at this, if this could be something. You don't have any proof one way or the other what that means. My authority is the English language, Your Honor. That billing record said, as alleged by Milo and Gabby. It's not, take a look at what Milo and Gabby might be referring to. So show me where it's alleged. It's alleged in the billing record that that was part of the... Show me where it's alleged in a pleading. Oh, I'm sorry, Your Honor. It is alleged in the pleading. This is A157 of our complaint in the appendix. It's A157. Okay, you're going to show me the words palming off. It doesn't use the word palming off. What it uses is the word misrepresentation and false designation of origin. This is a Section 43A claim, Your Honor. Our position is that Amazon shows genuine pictures of our clients' products and it says that is what go to their website, that's what is seen. Now... Even if, say I was a district court judge and I thought, well, there's probably really enough in this complaint that they could have figured it out. Is it an abuse of discretion to say, for a trial court judge, to say figuring it out isn't enough? You actually have to allege it as a count in the complaint? No, Your Honor. The background in this case was a little bit different. What happened was when, I'm sorry, when Amazon moved for summary judgment, they said that we did not make this allegation, period. In our reply to that, our opposition to that, we said, yes, we did. Take a look right here at the complaint. The court of all said, no, this was not alleged. We filed a request for reconsideration and we pointed out that this was alleged in our complaint. Then they came back and they said, oh, well, that's a little bit different. We're actually relying on other grounds for the attorney's fees. What happened was then we got the billing records. We then applied to the court and said, Your Honor, it's right here. It says, see the billing record right here where they say the palming off as alleged by the, as alleged in our complaint. What happened since then, the district court has been silent on this. The district court has not come back with a finding of how many attorney's fees should be awarded in this case. In fact, Amazon emailed the district court and said, you have not raised, you've not answered this question yet. The district court came back and said, yes, I know. That was over a year ago. I suspect what happened is the district court is now reconsidering this, having been shown that its original position is incorrect. We have demonstrated to the district court. Do you think it's possible the district court is just waiting to see what we say? Well, why come forward with a number if the thing gets reversed? Well, the fact of the matter is, Your Honor, we did point out it is in our complaint. We addressed this in our responses to the summary judgment. Amazon misrepresented to the district court, said these people never raised this, period. We came back and showed that we did. Exactly that you say that you raised. An express palming off or an implied palming off? I mean, they're very different theories of liability. No, what we're talking about, we're calling it knockoffs palming off. This is, we did have a section 43A count, that's count 11, I'm sorry, count four of our complaint appears on page 157. And what we do allege is that they show our genuine products, yet when they deliver products that are ordered, there's a picture of the exact product. It's a picture of our genuine product. When people order that, the knockoff is shipped instead. Can I ask you, I think it was at 590.91 of the appendix. There's a screenshot and in the lower right hand corner, there is a picture. It says Amazon and looks like maybe your product, but no more information. And I think you say you can buy through there. Does the record tell us, did you put on, introduce or submit potential evidence that says, if you're going to buy through there, you click and what do you get? Do you go to then one of the product pages that does then have the name of manufacturer, et cetera? Your Honor, I don't want to misspeak on that. I don't know the exact question, the answer to that question. What I do know is that they do have it fulfilled by Amazon with respect to at least one of the suppliers. The reason I ask is it seems to me it could make a difference. If it's right that the particular theory of palming off requires that I ask for a Milo and Gabby product and somebody gives me something different that's not in fact that product, then it matters whether before I purchase, I'm told this is manufactured by Smith and Jones or not. And the little inset picture at 590, 591, I think it is, doesn't say who it is. But the other product pages in each case, as far as I can tell, does identify a manufacturer who is not Milo and Gabby. Your Honor, I understand your question. I think the answer to that question is this. Our position is actually simpler than that. When you go to the Amazon page, what you see is the genuine Milo and Gabby product. In fact, we point out not only is it genuine Milo and Gabby product, it's my client's son's picture is actually on that page. So what happens is somebody goes to that page, sees the product, says I like that product. Then they go through the purchase process. They click on, enter it into your shopping cart, then go through the checkout process that Amazon has. What they see is that product, they think they're going to be buying that product. Right, but doesn't the, at least the red brief says, for the particular kind of passing off theory as opposed to other misleading or something, other kind of 43A theories. But for passing off, it could well be that the customer looks and says, I like that product. I have no idea who's making it, but I want that. And then somebody sends them that in exchange for money. No, that's exactly the difference. They don't send them that. They see the product up there. They say, I want that. This is absolutely correct. They see the product. They say, yes, I want that product. They go through the checkout process. They hand in their credit card information. What is shipped to them is not that product. It's a knockoff product. This is undisputed. Wait a minute. Stop talking. I'm sorry, Your Honor. A judge talks. But you're just running through the phrase, they go through the checkout process without discussing what pages appear after they click on the initial page. Well, I think Mr. Pogue testified at trial. This was the Amazon witness himself. He basically described that. He said, you go to this page, you go through, and you just go through the checkout process. It was never an issue of what is shown. What Amazon was pointing to was that with respect to certain products in very small print, it says sold by or supplied by, but that does not appear in the checkout process. That appears when you look at the actual page in very small print. And nothing, they never disputed. There's no dispute that when you see our product, you see a product, and what happens is they ship you something else. In fact, I tried to introduce a trial. Some people were complaining. They had reviews on it. They said, I like the way the product looked, but when I got it, the zipper fell apart, the colors ran. The judge wouldn't let me put that before the jury, but that's classic palming off. My client was getting blamed for the deficiencies of somebody else's product. In the blue brief at 25, you say the sales of the accused products are essentially consignment sales, but you don't have any record citations. What's your authority for that statement? Well, the authority for that is Amazon has been saying throughout this entire case that they do not take title to the products, and we agreed with that. We said we do not have any evidence. We cannot counter Amazon's argument that they don't take title. Our authority is UCC. It says consignment sale is when somebody sells a product for somebody else without taking title. Even under the UCC, there are pretty specific requirements that at least in this particular instance aren't satisfied. Well, again, what we're trying to say is we're not trying to say that this is a consignment sale. What we're trying to say, the argument we're making is the word sale includes all sorts of transactions that this court has recognized and the Supreme Court has recognized does not involve a transfer of title from the seller. Are you conceding that they're not consignment sales? I'm not conceding that they're not consignment sales. What I am conceding is that Amazon may not take title to the products that are sold. Our argument is that the number of questions that the UCC has specific requirements for consignment sales, you said, well, we're not arguing that. What we are saying is that the statute, and again, I'm sorry that we got sort of off track here. Our particular argument is 271A says anyone who offers for sale or anyone who sells a product that infringes a patent is a direct infringer. The issue before this court is, now the district court says that unless you are the person transferring title, unless I am personally transferring title, I can neither offer for sale nor sell the product. Our position is a little broader than that. Our position is saying in the securities law. Did the trial court really say that you have to have title to offer the product for sale? I thought that's not what they said. I thought that the trial court said you have to transfer title to actually be the seller. But the offer for sale piece, that's where the court didn't grant summary judgment, went to the jury on factual findings, the court adopted those factual findings, and then you abandoned that argument, right? We did not abandon that argument. What the district court did was the district court told the jury, I have already determined that Amazon does not sell. That was not with our consent. We did not stipulate to that. Did you oppose that? That's on the jury instruction, I think, on page 86. Did you oppose that? We did that before the trial, Your Honor. But you haven't raised that on appeal. Raised what? Well, we've raised that the, we've challenged the- You did not appeal the jury instruction. I don't think we appealed the, I do not know if that's been specifically raised on appeal. I don't see anything in your the offer for sale issue. I thought the whole, we're challenging the district court's finding on that particular issue. Here's what's confusing, at least. There are two different, relevant here, two different ways you might come under 271, or they might come under 271A. One is Amazon was selling. The other is Amazon is offering for sale. Now, in your complaint and even in your opposition to the motion to dismiss, I think you fairly carry both forward. But on summary judgment, they move for summary judgment saying no sale or offer for sale. Your brief in response can be read as limited to offer for sale, not sale. Might be read the other way. It's not entirely clear to me. The district court discussed only the offer for sale piece and said I can't give summary judgment to Amazon on this because you might be able to find offer for sale. Didn't discuss sale. But then they come time for the trial and the jury instruction is given, said I've already decided the sale question. Now, if the court decided the sale question, it seems like a fair inference that it did so because it understood your opposition to summary judgment as not really and an unappealed offer for sale question. That's the puzzle. Yes, Your Honor, I can tell you that that's not our intent. And what we did, what the district court did was sort of extrapolated from what we did stipulate to. The district court, the Amazon says we do not take title for this. There's no evidence that Amazon takes title. We said we have no evidence. We agree there's no evidence that Amazon takes title to this. We did not say that because Amazon does not take title, Amazon is not a seller. The district court took our agreement that we did not have evidence that Amazon took title and extrapolated that into a because they don't take title, Amazon does not sell. We never stipulated to that. It's a subtle point. What we stipulated to is we have no evidence that they take title or that they have title. We never stipulated to the idea that because of that, they can make no sale or offer for sale. I want to get in one more question, and that is at 37 of the blue brief, you say that, I'm quoting, Amazon tacitly conceded that the passing off claim is supported by the facts, but you don't cite to anything for that proposition. What page is that? 37 at the bottom and running over to 38, but there's no citation there either. There's nothing in that paragraph. Where'd they tacitly make a concession? And while you're at it, in your blue brief at 16 and 17, you say, at trial, Amazon's corporate representative testified that Amazon acts as a seller at every step, in every step of a transaction, and you didn't give me any citation of the record for that one either, and I like those citations. I'm sorry, the what page, 16 and 17? Yeah. I believe that's the Mr. Pote's testimony, roughly A129 through A1, I'm sorry, 2140, A2129 through 2140. I think that is his testimony, is in the record. Mr. Pote testified basically... No, no, I think you're going to get at least a minute or two to come back up, and I want you to give me a specific citation of the record on both of those. Just so we're clear, Your Honor, that's on page... 16 and 17. And the other one I asked for as well, please, at 37, the tacit concession. Okay, thank you. Thank you. Good morning, John Hughes for Amazon. Mr. Hughes, I want to ask you a question right away in terms of the palming off. I mean, these advertisements on Amazon showing their products with their children, how is that not at least implied palming off? I mean, it seems like it is a classic implied palming off. Well, I want to make sure that the record is clear, and this is actually right where I wanted to start, which is if you look at what we refer to as the product listing pages, and I believe that is what you're looking at in the record, beginning at A2479, none of the product listing pages for the pillowcases at issue ever identify Milo and Gabby as the manufacturer of the pillowcases. Clearly, but they showed their pillowcases with their children, and so the implication is that that's what you're going to get. They do show the advertising material, Milo and Gabby advertising material that was put up by the third-party sellers who are offering and selling the pillowcases. There's no evidence in the record that anyone that purchased these pillowcases thought they were getting a Milo and Gabby product. There's no evidence making that connection. They didn't put any evidence from a purchaser of the pillows in, and the evidence that he talked about that the judge didn't permit him to introduce a trial about complaints about the quality of the pillowcases. If you've used Amazon, you're probably familiar with the review feature on the website, and none of those complaints were directed toward Milo and Gabby. Nobody ever thought they were getting a Milo and Gabby pillowcase. They just thought they were, and were purchasing children's pillowcases from these third-party sellers. Well, how do you know that? I mean, you don't know that. You're saying there's no evidence from the other side. You didn't put any evidence that they were sure they weren't getting Milo and Gabby. There is no evidence. No evidence was presented to the court at summer judgment. No evidence was presented during the trial that any purchaser thought... Well, does that have something to do with the fact that the court said it wasn't in the complaint, and I'm not going to let you do anything with respect to it, move forward with discovery or anything else? I am not aware of any evidence in the record before this court or before the district court where any purchaser of a pillowcase, the pillowcases that were sold through the Amazon.com website, thought that they were purchasing a Milo and Gabby product or thought that the advertising copy that was on the product listing pages that we're looking at in the record were advertising Milo and Gabby products. In fact, to the contrary, the evidence that... Do you disagree that the photograph itself, the picture of the children, is a thing of value? Their advertising material has some value. So Amazon is in possession of a thing of value which has been obtained illegally. Is that correct? Well, the image is loaded onto the Amazon website by the third-party sellers. Amazon... When you say that it's loaded by the third-party sellers, at least the briefs below say that in the discovery it's established that, in fact, it's Amazon that picks the advertising material. That's not quite right, Your Honor. I believe that the way it works, if you want to sell a product, a pillowcase or a vaporizer, as we heard earlier this morning, and you're a third-party seller, you load the image, the third-party seller, onto the website. That was very clearly the testimony of Mr. Pote. Perhaps what you're referring to is once you've done that, once you've created a product listing, Amazon, in some instances, may send out an email advertising the product or there may be a product placement ad on a website. If you've just been on Amazon searching for products, then you navigate away to CNN. You might see a banner ad, and that's part of the service that Amazon supplies to you. Right, so Amazon uses an algorithm to select an advertisement that's targeted to the particular viewer. Right? Yes. So in other words, they give you the thing that gets loaded when you click on other sellers are available, but the thing that's on the main page that describes the product generically is chosen by Amazon's algorithm, right? That's not right. So if we look at page A2479 of the record, and that's the product listing page for one of the pillowcases at issue here, you can see the picture in the upper left-hand corner of the boy holding one of the pillowcases. That picture was loaded by the third-party seller in this case is FAC Systems. That's the one that actually stored the goods at your warehouse. FAC Systems is the one, the only third-party seller that took advantage of the fulfillment by Amazon service and had their product stored in the warehouse. But turning back to Judge O'Malley's question, that image is, all of images were loaded by third-party sellers, never by Amazon. The algorithm that you're referring to is what I was talking about with the targeted emails and the banner ads. But even there, the images that are supplied in the email or the banner ad are the images that are supplied by the third-party sellers and never supplied by Amazon. I don't understand why this is a big deal for Amazon. Don't you have indemnification agreements with everybody that goes on your website? With the sellers? Yeah. Yes. So isn't there some interest in protecting purchasers from rogue sellers who would engage in conduct like this? And you could simply submit your indemnification claim to them. Amazon takes the issue of intellectual property and running a marketplace with integrity extremely seriously. All sellers who come sell in the Amazon.com marketplace have to represent that they have the right to sell the products that they're listing on our website, including any necessary intellectual property rights. And we have a procedure where if you're an intellectual property owner, regardless of whether you're selling in the Amazon.com marketplace, you can fill out a form on the website and say, that third-party seller's product infringes my patent. And then the process is we take down, Amazon takes down the listing, and there's a process to sort it all out. Here, in this case, Amazon, the Milo and Gabby did not avail themselves of that process. So the first time Amazon learned about the issue was when we got the complaint, and we immediately removed all the listings. We kicked all the sellers out of the marketplace. And I can tell you that since then, both before that and after, Amazon has invested tens of millions of dollars in processes, automated and human processes, to keep problem products out of the website. So once Amazon understands that there's a problem with a particular product, we take action, we take it very seriously. Can I ask you, under your view of the various laws here, patent, copyright, Lanham Act, what, if anything, legally obliges Amazon to do all of those responsible things you just described? Well, they didn't pursue the theory here, but one example could be indirect patent infringement. So if Amazon knew that there were infringing products being marketplace and sent the kind of target emails that we were discussing, or the banner ads and the websites, that could potentially form the basis of an indirect infringement theory. So there are potential legal theories that could be in play here. But there was no demand letter. We got the complaints. I guess I was answering a question that seemed a little broader than the implied palming off, right? There also could be implied palming off if it was properly alleged. And I think if you look at the complaint, it's nowhere to be found. And just to be clear, the argument you were making at the beginning of your oral argument here about there is no evidence that anybody actually thought they were getting Milo and Gabby, they just ended up getting bad products, but they had no idea whether they were Milo and Gabby. That's not, in fact, the ground on which the district court dealt with the palming off theory that he said just not pled. He didn't make a summary judgment assessment. District court found that Milo and Gabby did not have a valid mark, and then also found on this palming off theory that it had not been adequately pled in its complaint. I just wanted to make sure that the record was clear. Can I ask you this other record question? If you look at 590, and this is, I don't know whether, look at that. This is the little inset on a web page about something else, where it says in the lower right hand corner Amazon.com, and there are no names of anything in here. There's just a pillow with a child. In order to, if I say I'm very interested in that, how do I go about purchasing it? Do I then get to 2479 or a comparable page? Exactly. Is there something in the record that tells us that's the way it works, or just the absence of anything to the contrary? Well, I'm fairly confident that Mr. Pode explained that during his direct testimony, and you have portions of that in the record. I'm not sure whether the explanation for that connection is in the portions that you have, but what I can tell you is what we're looking at on page 590 is an example of these Right, and that comes from 2484. I mean, that's the corresponding product. If you click on the thing on page A590, then it takes you to Amazon.com website, the product listing page that your honor just identified. And I had asked Mr. Mann the question whether when the district court proposed the jury instruction on page A86 that told the offer to sale jury that the absence of a sale had already been determined. I think he said we objected to that. Do you agree with that? And if so, is there something in the materials we have in front of us, or is that just true but not in the JA? First of all, I don't think the propriety of that jury instruction has been appealed in this as is. But could it have been appealed? Was it preserved below? I don't remember whether there was an objection lodged to that instruction during the trial proceedings itself. I don't think there was during the jury instruction charge conference. I will say that the judge read that particular instruction to the jury, I think, even before opening statement, so at the beginning. And I just can't remember whether or not they objected to that. Well, let me just raise the question to a slightly greater level of generality. After the judge said what he said in the summary judgment ruling, was there or was there not a dispute about what was still left of the patent infringement claim, whether sale was still left or not left? Because it's not entirely clear to me either from their opposition to the summary judgment motion or the district court's summary judgment opinion whether he meant to say only the offer to sale piece of 271A survives. So Amazon's view was that only the offer to sell theory of liability survived summary judgment, and I believe the district court agreed with that because we filed the motion. The instruction at A86 reflects agreement with that, but I'm trying to understand was that a disputed proposition in whatever the period was between the summary judgment ruling and the trial. Certainly Amazon's view, I can't say what was in their head, but Amazon's view was that we moved for summary judgment on every basis of liability under 271A, and the district court came back and they only opposed on offer to sell. Maybe yes, maybe no. Subsection A is about offer and subsection B is about the UCC in a position of seller business, and that subsection B, I don't know, the second subsection does say sale, not just offer to sale. The language is not entirely precise, but if you look at the introduction to that second section that you're referring to in their summary judgment opposition brief, they say that the UCC, we can look to that to inform us. That's right, the sentence opens that way and then on 596 and 597 it gets broader. The trial court denied summary judgment. The trial court did not grant in part and deny in part, correct? On the patent claim, we granted summary judgment on a number of claims, but on the patent claim it denied Amazon's summary judgment motion on the basis that there was a fact dispute about offer for sale, and we went forward and had a trial on offer for sale. I think the sale issue was really resolved if you look at, they didn't raise it other than the way Judge Toronto has mentioned on the patent, but they did have a discussion of it in their opposition to the copyright portion of Amazon's summary judgment motion, and there they effectively concede that, not effectively, they do concede that the third party sellers are the ones that are making the sale. They were trying to make a vicarious liability that Amazon has control, but if you look at page A576, which is their opposition on the copyright, they concede that the third party sellers are making the sale, and then in resolving that portion of the Amazon's motion, the district court made the finding that Amazon was not the seller. So what do we have? If your position is that they waived the sale issue below, and they waived the offer for sale issue here, what's left? To affirm the district court, I mean, they don't have anything left on their patent liability theory. They've waived sale, which is the only argument they're advancing here, and they have not attacked the jury verdict in the district court's adopting of the factual findings and that Amazon did not offer to sell the pillowcases. So procedurally, I think they're in a very difficult spot on the patent infringement issue. Okay, can I ask you about the copyright? I don't remember, did you cite or do you have copyright law authority about the meaning of sale in 1063, right? Distribute by sale or other transfer of ownership, I think it's like that. How do we know if we know that under the copyright law, what we have said about sale under 271a in the patent context supplies the same standard or what? So I don't believe we cited any cases that were copyright law cases on the definition of sale. What I will say is that this court has consistently interpreted the sale or offer to sale language in the in the Patent Act and in the Intercon case and the Tariff Act based on, you know, ordinary definition supplied by Wax Law Dictionary in the UCC. But if we're talking copyright law, suddenly we're talking Ninth Circuit law, right, not Federal Circuit law. So I guess I'd be interested in Ninth Circuit law on the interpretation of 1063 and what those words mean and as I think you just noted, you haven't given us that case. I don't think we have supplied Ninth Circuit authority. I think under any definition of sale, Amazon's not in the position of making the sale here. But what about the other transfer of ownership language? So I think that in the context of the Copyright Act, and I've thought about this before argument, is that that's talking about is giving away. So it's not, you're not transferring it by a sale, but you're giving away, you're transferring ownership of something that's copyrighted and that extra language is meant to capture that. If we do... But you don't have any authority for that proposition? I don't have a case to cite for that, but what I would say, if we read the transfer of ownership language that Alan Gabby proposes, then UPS, any warehouse distribution business, would be on the hook for liability under their reading, and I don't think that that is an appropriate reading. Is it possible that one of the first sale cases in copyright law talks about gift as a form of transfer? It is, yes, I believe so. That's what I'm thinking of. I see that I'm well past my time, so... Well, can I just, I just want to follow up on this. I guess I'm, maybe I'm confused, but tell me why I should not feel a little bit of a loss to understand what we do with the 1063 claim in the absence of law telling us whether there was a sale or other transfer of ownership here. Well, I think that you've got all of the necessary information. There's no waiver issue as to that, right? I mean, or forfeiture, or it's not before you issue whatever the label is. We've not advanced a waiver argument on that point, and I do think that the information that the court has before it clearly establishes that Amazon did not sell the pillow cases, and that in order for their liability to attach, there has to be a sale or transfer of ownership. And you were pointing to A576. What were you pointing to there? This was a piece of their opposition to summary judgment. So their A576 is where they make concessions, I think, concerning the fact that third-party sellers are making the sale. They say, further, Amazon's selling on Amazon's service terms outlines similar and additional points of control over the third parties who sell the infringing items. It says who sell the infringing items with Amazon. I mean, you're ellipsing out. Well, let me point you, yes, to the with Amazon, but they're talking about third-party sellers are making the sale, and then later on the page, they say these points of influence are only examples of Amazon's control. This is where they're making their vicarious liability argument over the terms of sale between non-FBA sellers and end purchasers. They're saying that the sale is between the third-party sellers and the end purchasers. And again, the plain language of the copyright sale or other transfer of ownership, Amazon never does neither of those ever, and that's what the evidence below clearly establishes. But that would require us to say, just as we have said in the 271A context, we borrow the UCC definition requiring that not only title be transferred, but that it be transferred from the seller and say 106.3 is the same. Yes, I think both parties are suggesting it's the same, whether it's copyright or patent. And yes, I think that sale should be given its ordinary meaning under the Copyright Act, just like it has been given under 271A in the Patent Act. Okay, thank you. Thank you, Your Honors. Counsel, we'll give you your full five minutes for rebuttal since we let your friend on the other side go over. Well, I'd like to try to attempt to answer some of your questions. With respect to what's on page 36, the only answer I can give you, Your Honor, is apparently that was a mistake on our part not to actually cite, put into this appendix. We do have a reference on page 1062. I don't mind the mistake. I just want the reference. Okay, yes, I do have the reference. It's to docket number 39. Page 1062. Page 1062, I believe we make reference to a docket number in the proceedings below. Unfortunately, that page did not make it into the appendix that was submitted to the court. I apologize for that, but I think that's the explanation. I realize that doesn't do you any good without having that in front of you, but I wanted to explain that that's what occurred in that respect, Your Honor, and I do apologize for that. With respect to page 16, what we're referring to is, you see the other references we have here, A2132, that is answers that Mr. Pode gave, I believe on direct examination by Mr. Hughes, where he said, you know, every product on Amazon's website has a page like this. We call it a project detail page. Later on, he says, so in this case, you can see that the item is sold. It's offered for sale by Amazon itself. So you can see the ships for them, and it's sold by Amazon, et cetera, et cetera. And then I think the other references we have here, A259, A2129, A213840, that is where Mr. Pode testified. Where does he say that Amazon's acting as the seller? Well, that was for the soccer, right? Yeah, that is sort of our characterization of this. That is not meant to be a direct quote. What we were saying is this is a summary of what his testimony is. What we were trying to say in our brief here is if you look at what he testifies to, he confirms that Amazon does everything in a sale except for transfer title. Amazon puts it on their website. Amazon collects the money. Amazon ships it from the warehouse. Amazon stores it in the warehouse. Amazon puts it in a box. Amazon puts a label on it. What doesn't Amazon do? They don't sell it. No, that's a... Do you concede that we should treat sale under the Copyright Act the same way as we treat sale under the patent law? I would respectfully disagree that they should be treated exactly the same. The reason for that... Have you ever argued that they shouldn't be treated the same? Well, I think they're different languages. There's different... Well, it's different analysis. What it says is sale or other transfer of ownership. That's the language of the Copyright Act. Aside from the other transfer of ownership, did you argue anywhere in your briefs to us or in your briefs below that sale is different under 106 and Ninth Circuit copyright law than it is under patent law? No, Your Honor, we've not. Our position all along, and we believe this is consistent with not only intellectual property law, but also securities law, is that sale is given its ordinary meaning. What typical contract provisions. In this instance, sale should be given its colloquial meaning. What most people mean by sale. I hand you something, you give me something, and I hand you something of value, you hand me something in return. It doesn't turn on peculiarities of title and so forth. I think that's consistent. I forget the exact language, but I think this Court's precedent says that sale should be given its ordinary meaning. The Supreme Court case we cited, Pinnock v. Dahl, says that, again, sale is given its ordinary meaning. It's what laymen would view as a sale. So in that sense, yes, whether we're talking about copyright law, whether we're talking about 43A, whether we're talking about 271A, generally sale is the same. I think when Congress passed these various laws, what they intended was that sale should be given its ordinary meaning, and it shouldn't turn on technicalities such as who transfers title, where title is transferred, that sort of thing. I know it's a long answer to your question, but the general answer is yes, for purposes of all these laws, a sale is a sale. Okay. Anything else? Can I just make one more? I strongly disagree. We never conceded that Amazon did not sell anything. I just want to simply point out that before the trial, very late in this, there was motion in limine filed by Amazon asking us, and the court granted this, for us not to argue that there was a sale. If we had conceded, if we had agreed that Amazon doesn't sell anything, why would there be a need for a motion in limine shortly before trial? Why would we oppose that? I just want to make that point. Thank you, Your Honor. Where's your opposition? I want to take a look at that. Where's your opposition in the record to the motion in limine? I'm not sure that that was... I'm not sure if that was filed. Let me find that. I know we referenced it in motions in limine. I believe we made just reference to the motion in limine, and we did not cite our actual opposition to it. But there was an opposition, obviously. All right. And that was at... Their motion is A1126. Hold on. Okay. Anything else? Thank you, Your Honor. Just a second. I want to make sure Judge Wallach is done. Yeah. Well, I'm not finding 1126 in the appendix. It should be in there. Sometimes things get A numbers that don't appear in the bound joint appendix, because you put numbers on a vast universe of material and then find only the stuff that's cited. Is this... Maybe this is... This may be another snafu, Your Honor. I know we cited it to A1126. If it's not in the submitted volume, I'm looking at our reply brief. Page 22 of our reply brief, we make reference to A1126 twice on that page. If it did not appear in your bound volume of cited pages, I have no explanation for that. I apologize. Okay. Thank you. Thank you, Your Honor. Cases will be taken under advisement. This court is adjourned. All rise.